IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| VICTOR CHARLES FOURSTAR, JR., | Cause No. CV 16-19-GF-SPW-TJC |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| RICHARD KANE, et al., | |
| Defendants. | |

Plaintiff Fourstar filed a complaint in this matter on March 14, 2016. Initially, the Court denied leave to proceed in forma pauperis and dismissed the complaint in the belief that Fourstar had accumulated three or more "strikes" under 28 U.S.C. § 1915(g).  The Court of Appeals, however, noted that at least one case on which this Court relied was dismissed for lack of jurisdiction, and reversed and remanded the case to this Court for further proceedings.

On December 20, 2018, the Court granted Fourstar's motion to proceed in forma pauperis, advised him of certain deficiencies in his pleading, and gave him an opportunity to file a supplement correcting those deficiencies.  The Court also provided him a copy of his original complaint.  *See* Order (Doc. 34) at 3–5, 7 ¶ 3.

Fourstar responded on January 25, 2019 (Doc. 35).  Five months later, on June 21, 2019, he also filed a motion to amend (Doc. 37), along with a 35-page

1

proposed amended complaint.

## I. Claims and Analysis

Fourstar was a prisoner at the time he filed this action.  *See* Compl. (Doc. 2) at 1 (showing Fourstar's mailing address).  He is also proceeding in forma pauperis.  The Court must therefore review his complaint to determine whether it fails to state a claim on which relief may be granted.  *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(a).

### A.  Claims 1 and 2

Fourstar's first two claims allege that all the Defendants he names are "bound together and functioning as a continuing unit in the enforcement of illegal and prejudicial state and federal criminal indictments and civil commitment procedures," Compl. (Doc. 2) at 8–9, or "illegal and prejudicial state and federal conviction(s) and SOMA, SONRA[1] and § 4042(B) procedures," *id.* at 11.  These procedures include, according to Fourstar, his impending civil commitment and certification as a sexually dangerous person, *see* 34 U.S.C. § 20971, as well as the Federal Bureau of Prisons' obligation to notify appropriate State, Tribal, or local authorities when his release is imminent, *see* 18 U.S.C. § 4042(c)(1).  Fourstar contends that all Defendants have executed or are executing these procedures in

---

[1]  The Court is not aware of any applicable federal law called SONRA.  As explained below, it appears Fourstar is referring to SORNA.

violation of the Ex Post Facto Clause, other constitutional rights, and the "Bad Men Clause of the 1851 and 1868 Fort Laramie Treaties."  He also alleges that the Defendants are motivated by "invidious racial and class based animus."  *See id*. at 10.

"SOMA" is the acronym for the Sex Offender Management Assistance Program, a federal grant program available to State, Tribal, or local jurisdictions that incur costs in implementing viable sex offender registry systems.  *See* 34 U.S.C. § 20928(a).  SOMA neither confers rights on Fourstar nor violates any cognizable right.  Similarly, no one in the District of Montana has moved to civilly commit Fourstar, and no one has alleged he is "suffering from a serious mental illness, abnormality, or disorder" causing him to have "serious difficulty in refraining from sexually violent conduct or child molestation."  34 U.S.C. § 20971(e)(2).  Additionally, as Fourstar has repeatedly been advised, the "bad men" provision of the 1868 Fort Laramie Treaty does not say what he apparently believes it says.  *See United States v. Drapeau*, 414 F.3d 869, 877–78 (8th Cir. 2005); *see also, e.g.*, Order (Doc. 38) at 6, *Fourstar v. Eliason*, No. 4:16-CV-113-SPW (D. Mont. Dec. 6, 2018).  These provisions of law are not relevant to Fourstar's case.

"SORNA" is the acronym for the Sexual Offender Registration and Notification Act, which is subtitle A of title I of the Adam Walsh Child Protection

and Safety Act of 2006.  *See* Pub. L. No. 109-248, 120 Stat. 587 (July 27, 2006).

SORNA is relevant to Fourstar's case, but the Court is not aware of any authority

holding that its application or its requirements violate a constitutional right of a

person in Fourstar's circumstances.  The Act expressly applies to sex offenders

serving prison sentences at the time of its enactment in July 2006.  *See* 34 U.S.C. §

20913(b)(1).  This includes Fourstar, who committed aggravated sexual abuse on

or about March 24, 2002, was sentenced in February 2003, and was released from

prison in December 2016.  *See* Judgment (Doc. 110) at 1, Pet. for Warrant (Doc.

163) at 1, *United States v. Fourstar*, No. 4:02-CR-52-DLC (D. Mont. Jan. 17,

2017).

Further, in March 2002, when Fourstar committed aggravated sexual abuse

in violation of 18 U.S.C. § 2241(a), it was already clear that, upon conviction,

federal sex offenders must register with the State or the FBI pursuant to the 1994

Jacob Wetterling Crimes Against Children and Sexually Violent Predator

Registration Program.  *See, e.g.*, 42 U.S.C. §§ 14071(a)(1)(A), (3)(B), (b)(3)(A),

(4)–(5), (7)(A), (d), 14072(a)(3)(A), (b)(2), (c) (eff. Oct. 30, 1998); *see also* 42

U.S.C. § 14071(j)(1) (eff. Oct. 28, 2002).  SORNA repealed and replaced the

Wetterling Act.  *See* Pub. L. No. 109-248, tit. I, § 129, 120 Stat. at 601 (July 27,

2006); *United States v. Kebodeaux*, 570 U.S. 387, 391–93 (2013).

Therefore, no new legal consequence arose after the fact of Fourstar's

4

criminal conduct, and both the Wetterling Act and SORNA are proper exercises of Congressional authority under the Necessary and Proper Clause. *See Kebodeaux*, 570 U.S. at 393–97. Case law raising issues of retroactivity, the nondelegation doctrine, the Ex Post Facto Clause, the Commerce Clause, and the Tenth Amendment, *see, e.g.*, *United States v. Byun*, 539 F.3d 982, 986 n.6 (9th Cir. 2008), provide no foothold in Fourstar's case. As to due process, Fourstar alleges only that he is "wrongfully subjected" to SORNA. *See* Compl. (Doc. 2) at 10. He is rightly subject to SORNA. *See* 34 U.S.C. § 20913(b)(1).

Fourstar also alleges he was incarcerated beyond his lawful discharge date "without authority where he is actually innocent." Compl. at 8. A decision in this case that he is actually innocent of either aggravated sexual abuse or his 1992 state conviction for sexual intercourse without consent would necessarily imply that his federal or state conviction is invalid. He may not litigate such a claim in this case. *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). Even assuming the *Heck* bar might not apply to the state conviction, *see, e.g.*, *Spencer v. Kemna*, 523 U.S. 1, 19, 25 n.8 (1998), the three-year limitations period expired at least ten years before Fourstar filed this action, *see* Mont. Code Ann. § 27-2-204(1); *Wilson v. Garcia*, 471 U.S. 261, 280 (1985); Correctional Offender Network, https://app.mt.gov (accessed Sept. 9, 2019) (citing ten-year sentence imposed on Dec. 23, 1992). There is no forward path in this action for Fourstar to argue that he is innocent of a

5

criminal offense.

Because Fourstar fails to state a claim in these respects, his allegations come down to the proposition that all the Defendants he names are "bound together and functioning as a continuing unit" in enforcing the consequences of the federal and/or state criminal judgments against him. That proposition, by itself, provides no support for an inference that any defendant is acting on invidious racial or class-based animus, and Fourstar alleges no other fact providing support for such an inference.

Fourstar fails to identify anything illegal or unfairly prejudicial that any named Defendant has done. Claims 1 and 2, *see* Compl. (Doc. 2) at 7–11, should be dismissed for failure to state a claim on which relief may be granted.

**B. Claim 3**

Fourstar was advised that he did not adequately explain what rights prison officials in Florida violated by using the sex offender management handbook. He was also required to explain why this Court would have personal jurisdiction over federal prison officials in Florida. *See* Order (Doc. 34) at 3. His response to the Order (Doc. 35) does not address Claim 3. These allegations, *see* Compl. (Doc. 2) at 11–13, should be dismissed because they fail to allege a violation of federal law and also fail to support exercise of jurisdiction over persons in Florida.

### C.  Claims 4, 6, and 5 (Social Security)

Fourstar contended that his rights were violated by social security officials (Claim 5), by people involved with the entry of child support orders and enforcement proceedings (Claim 4), and by persons involved in probate of the estate of his father (Claim 6).  *See* Compl. (Doc. 2) at 13–19.  All of these claims suggested violations of due process or equal protection.  Fourstar was therefore advised of the elements of such claims and given an opportunity to allege relevant facts or otherwise explain what claim or claims he was trying to pursue.  *See* Order (Doc. 34) at 4–5.

Fourstar's response to the Order (Doc. 35) does not address Claim 4, regarding child support.  It also fails to address Claim 6, regarding the estate. (Fourstar's motion to amend his complaint, filed five months later, withdraws Claim 6.  *See* Mot. to Amend (Doc. 27) at 1, 2 n.1.)

With respect to his alleged denial of social security benefits in Claim 5, Fourstar's January 2019 response to the Court's Order alleges that he received notice of a social security hearing scheduled to occur on March 6, 2019.  *See* Resp. to Order (Doc. 35) at 2 ¶ 3 & App. 3 (Doc. 35 at 9).  This notice does not support an inference that Fourstar has been, is being, or will be deprived of notice and an opportunity to be heard with respect to his social security claim.

Thus, the Court can only conclude that Fourstar did not address the defect in

his original complaint and fails to allege sufficient facts to state a claim on which relief may be granted. All of these allegations, *see* Compl. (Doc. 2) at 13–15, 17, 18–19; Resp. to Order (Doc. 35) at 2 ¶ 3, should be dismissed because all fail to allege a violation of federal law.

### C. Claim 5 (Pre-Release Centers in Montana and Wyoming)

Claim 5 of Fourstar's original complaint also alleged that pre-release centers in Montana and Wyoming contractually limited sex offenders' placements to six months. He was advised that he must explain why such contracts violate federal law and how he was harmed. *See* Order (Doc. 34) at 3–4. His response to the Order (Doc. 35) does not address the allegations in his complaint.

Instead, Fourstar refers to certain provisions of the First Step Act, *see* Resp. to Order (Doc. 35) at 1–2 ¶¶ 1–2 & App. 1–2 (Doc. 35 at 7–8), and an administrative process and grievance at a detention facility in Sheridan, Oregon, apparently involving a "separatee" whose identity Fourstar does not know, *see id.* at 2 ¶ 4 & App. 4. These allegations have nothing to do with Fourstar's allegations about the contracts governing pre-release centers in Montana and Wyoming. And, as Fourstar should recognize, *see* Order (Doc. 34) at 3 ¶ B, he has failed to explain why this Court would have personal jurisdiction over prison officials in Oregon.

These allegations, *see* Compl. at 16–17; Resp. to Order at 1–2 ¶¶ 1–2, 4, should be dismissed for failure to allege a violation of federal law and, as to

8

decisions by persons in States other than Montana, lack of personal jurisdiction.

## II.  Additional Allegations

In his response to the Order permitting him to supplement his original complaint, Fourstar adds new allegations.  The Court frankly admits it does not understand what he is saying, but all of his allegations dispute the validity of his federal conviction and subsequent revocations of his supervised release.  He does not say anything that could free these allegations of the *Heck* bar precluding civil litigation of claims necessarily implying the invalidity of a conviction or sentence. These new allegations, *see* Resp. to Order (Doc. 35) at 3–6; *see also id*. at 2 ¶ 5 & App. 5, should be dismissed as barred by *Heck v. Humphrey*, 512 U.S. 477, 486 (1994).

## III.  Motion to Amend

Fourstar seeks leave to amend his complaint because he is no longer a prisoner, and because he wishes to add defendants who are newly participating in the violations he alleged in his original complaint.  *See* Mot. to Am. (Doc. 37) at 1–2.  But the proposed amended complaint is Fourstar's first amendment.  He may amend his complaint once without seeking leave.  *See* Fed. R. Civ. P. 15(a)(1).  His motion for leave is moot.

## IV.  Amended Complaint

For the same reason Claims 1 and 2 of Fourstar's original complaint should

be dismissed, the corresponding provisions of the amended complaint, *see, e.g.*, Am. Compl. (Doc. 37-1) at 7 ¶¶ 1, 3–4; 8 ¶ 2, should also be dismissed.

Fourstar's amended complaint also alleges that employees of the Social Security Administration denied his "protectively filed application for disability and supplemental benefits" because he had "not worked long enough"; twice denied his appeal when he twice failed to appear due to the revocation of his supervised release on two separate occasions; and "failed [to] acknowledge" a prison official's "failure to supply" Fourstar with new applications for benefits. *See* Am. Compl. (Doc. 37-1) at 26–27. As Fourstar has already been advised, *see* Order (Doc. 24) at 10, *Fourstar v. Bullock*, No. 4:18-CV-36-SPW (D. Mont. Dec. 6, 2018), the Supreme Court does not recognize a *Bivens* action against officials of the Social Security Administration or administrative law judges. *See Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988). Injunctive relief is also not available, because Fourstar cannot receive retroactive benefits while he is in prison. *See Fowlkes v. Thomas*, 667 F.3d 270, 271–72 (2d Cir. 2012) (quoting 42 U.S.C. §1383(b)(8)(A)(i)). As these allegations fail to state a claim on which relief may be granted, amendment would be futile.

Nevertheless, in some respects Fourstar's proposed amended complaint might state one or more claims on which he might proceed. For instance, he asserts that an officer used excessive force in arresting him on an August 2018

petition to revoke his supervised release. *See, e.g.*, Am. Compl. (Doc. 37-1) at 16 ¶ ii. But he may not pursue these claims in this action. The proposed pleading raises claims "with respect to or arising out of . . . [a] transaction, occurrence, or series of transactions or occurrences," Fed. R. Civ. P. 20(a)(2)(A), wholly separate from the transactions and occurrences involved in the original complaint. Further, the allegations involve new defendants not previously named in this action, *see* Compl. (Doc. 2) at 1 (caption), 7 ¶ III(B), 8 "(Defendants)"; allege events that occurred years after Fourstar filed the original complaint; and assert legal claims different from those alleged in this case. Fourstar's new claims and defendants are not properly joined with the claims and defendants in his original complaint. *See* Fed. R. Civ. P. 18, 20(a)(2)(A); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (construing Fed. R. Civ. P. 20(a) in the context of prisoner litigation and concluding "[u]nrelated claims against different defendants belong in different suits . . . .") Just as in *George*, Fourstar "did not make any effort to show that the [13] defendants he named had participated in the same transaction or series of transactions or that a question of fact is 'common to all defendants.'" *Id.*

Finally, Fourstar may not litigate claims on behalf of anyone else, because he is not a member of the Bar of this Court. *See, e.g.*, Am. Compl. (Doc. 37-1) at 16 ¶ iii, 27 ¶ ii; D. Mont. L.R. 83.8(a).

Fourstar's amended complaint (Doc. 37-1) should be dismissed. Either his

allegations fail to state a claim on which relief may be granted, or he attempts to join claims and defendants he may not pursue in this action.  He may file a new action if he chooses.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1.  Fourstar's motion to amend (Doc. 37) should be MOOT.

2.  All allegations in Fourstar's Complaint (Doc. 2), Response to Order (Doc. 35), and Amended Complaint (Doc. 37-1) should be DISMISSED.

3.  The action should be DISMISSED.

4.  The Court should CERTIFY, pursuant to Fed. R. App. P. 24(a)(4)(B), that any appeal from this disposition would not be taken in good faith.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Fourstar may object to this Findings and Recommendation within 14 days. *See* 28 U.S.C. § 636(b)(1).[2]  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Fourstar must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address" under this case number.  Failure

---

[2]  This deadline allows a party to act within 14 days after the Findings and Recommendation is "served."  Federal Rule of Civil Procedure 6(d) allows three additional days after the period would otherwise expire.

to do so may result in dismissal of this action without notice to him.

DATED this 30th day of September, 2019.

*/s/ Timothy J. Cavan*
Timothy J. Cavan
United States Magistrate Judge

13